IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Mary Spates as Parent and Natural Guardian for C.M.,<br><br>Plaintiff,<br><br>vs.<br><br>Horry County School District,<br><br>Defendant. | Case No.: 4:21-cv-03634-JD |
| Mary Spates as Parent and Natural Guardian for C.M.,<br><br>Plaintiff,<br><br>vs.<br><br>Horry County School District,<br><br>Defendant. | **ORDER AND OPINION**<br><br>Case No.: 4:22-cv-02169-JD |

This consolidated civil-rights action is before the Court on Plaintiff Mary Spates's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e). (DE 60; DE 60-1.)[1] Plaintiff seeks reconsideration of the Court's order granting Defendant Horry County School District's ("HCSD") motion for judgment as a matter of law under Rule 50(a). (DE 59.) HCSD opposes the motion. (DE 61.)

[1] The two cases are *Spates v. Horry Cnty. Sch. Dist.*, 4:22-cv-02169 (D.S.C. Nov. 13, 2025), and *Spates v. Horry Cnty. Sch. Dist.*, 4:21-cv-03634 (D.S.C. Nov. 13, 2025).

Plaintiff contends that the Rule 50 ruling treated final-policymaker status as dispositive and failed to account for other recognized bases of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), including custom, deliberate indifference, ratification, and delegation. (DE 60-1 at 1, 3–6.) For the reasons below, the motion is denied.

## I. BACKGROUND

These consolidated actions arise from separate disciplinary proceedings involving Plaintiff's son, C.M., in 2019 and 2020. Plaintiff alleges that in each matter she timely sought review of disciplinary action but did not receive the appeal or hearing process to which C.M. was constitutionally entitled. The cases were consolidated for trial. (DE 19.)

Plaintiff presented her case-in-chief on November 12, 2025. After Plaintiff rested, HCSD moved for judgment as a matter of law under Rule 50(a), arguing that Plaintiff had not presented evidence from which a reasonable jury could attribute any constitutional deprivation to HCSD itself. The Court granted the motion on the record and later entered a written Memorandum Order setting forth its reasoning. (DE 59.)

Plaintiff timely moved under Rule 59(e). She argues that the Court's Rule 50 analysis effectively made final-policymaker status dispositive and overlooked evidence supporting a de facto custom, deliberate indifference after notice, ratification, and delegation of final authority. (DE 60-1.) HCSD responds that the trial evidence was insufficient to establish any of those bases for municipal liability. (DE 61.)

## II. LEGAL STANDARD

Rule 59(e) does not itself specify a standard for altering or amending a judgment. The Fourth Circuit recognizes three grounds for relief: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994); *see also Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 *Wright & Miller's Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

Because Plaintiff alleges clear error in the Court's Rule 50 ruling, the Rule 50 standard is also relevant. Judgment as a matter of law is proper when a party has been fully heard and "a reasonable jury would not have a legally sufficient evidentiary basis" to find for that party on the issue. Fed. R. Civ. P. 50(a)(1). The Court must "review all of the evidence in the record," draw "all reasonable inferences in favor of the nonmoving party," and make "no credibility determinations" or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

## III. DISCUSSION

### A. Scope of the Rule 50 Ruling

Plaintiff does not rely on newly discovered evidence, and she does not contend that an intervening change in controlling law requires amendment of the judgment. Two published Fourth Circuit decisions issued after judgment—*Johnson v. Baltimore City, Maryland*, 163 F.4th 808 (4th Cir. 2026), and *Mullen v. Town of Sunset Beach,*

*North Carolina*, 175 F.4th 466 (4th Cir. 2026)—apply the existing *Monell* framework and are considered below. The motion therefore turns on whether the Rule 50 ruling rested on clear legal error or produced manifest injustice.

Plaintiff is correct that final-policymaker action is only one route to municipal liability. Fourth Circuit precedent recognizes four: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025); *see Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022).

But the Court did not treat the status of the hearing officer or school-level administrators as dispositive of every route. The written Rule 50 order expressly identified all four avenues and concluded that the proof was insufficient to establish municipal liability. (DE 59 at 3–5.) The Court's oral ruling also addressed whether the evidence showed a District policy or custom and whether the School Board or another authorized policymaker directed, adopted, or ratified the challenged conduct. To the extent any shorthand in the oral ruling could be read more narrowly, the ruling as a whole did not apply a categorical final-policymaker requirement to custom or omission liability.

The Court therefore considers the theories Plaintiff identifies. In doing so, it assumes for purposes of Rule 50 that Plaintiff made the requests for review she described, that the HCSD employees with whom she communicated received those requests, and that the requested review was not provided as she contends. The question is whether that evidence, together with the remaining trial record, supplied a legally sufficient basis to attribute the alleged deprivation to HCSD itself.[2]

## B. The Evidence Did Not Establish Final Policymaking Authority in the Hearing Officer

Plaintiff argues that HCSD's "written disciplinary framework expressly made the hearing officer's decisions final for the category of discipline at issue," and that this finality made the hearing officer's actions those of the District. (DE 60-1 at 4.) HCSD responds that the policy was not admitted at trial and that Plaintiff presented no evidence of a delegation of policymaking authority. (DE 61 at 4–6.)

The governing cases distinguish final decision-making from final policymaking. There is a "marked difference between 'the authority to make final policy [and] the authority to make final implementing decisions.'" *Misjuns*, 139 F.4th at 385. The policymaker inquiry turns on "the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Hunter v. Town of Mocksville*, 897 F.3d 538, 555 (4th Cir. 2018) (quoting *Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000)).

---

[2] Plaintiff repeatedly refers generally to the "trial evidence," but her Rule 59(e) memorandum does not cite any trial-transcript page or admitted exhibit that the Court allegedly overlooked. The Court nevertheless has reconsidered the trial evidence under the Rule 50 standard in addressing the theories Plaintiff raises.

*Hunter* also illustrates why actual delegation matters. There, a local ordinance gave the town manager unconstrained authority over the terms of employment and the town maintained no review process; those legal materials established an express delegation of final policymaking authority. *Hunter*, 897 F.3d at 556–58. Nothing comparable was introduced here. Plaintiff did not introduce the disciplinary framework on which her present argument depends, and no testimony or other evidence established that HCSD delegated to the hearing officer authority to make or alter District policy concerning disciplinary review. Nor does Plaintiff's Rule 59(e) memorandum identify any trial exhibit or transcript testimony establishing such a delegation.

Thus, even assuming the hearing officer had the last word on an individual implementing decision, the trial record did not permit a reasonable jury to find that the hearing officer possessed final policymaking authority. Plaintiff has not shown clear error on this theory.

**C. The Evidence Did Not Establish a Persistent and Widespread Custom**

Plaintiff next contends that the evidence permitted a jury to find a de facto custom of denying meaningful disciplinary review because her requests went unaddressed in both disciplinary matters involving C.M. (DE 60-1 at 2, 4.)

A custom-by-condonation theory requires a "persistent and widespread practice[]" whose "duration and frequency" support an inference that policymakers had actual or constructive knowledge of the conduct and failed to correct it because of deliberate indifference. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402–

03 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987)). "Sporadic or isolated violations" are insufficient; the practice must be "widespread or flagrant." *Id.* at 403.

The Fourth Circuit's recent decisions reinforce that requirement. *Misjuns* explained that "numerous particular instances of unconstitutional conduct" are required to establish a custom or practice. 139 F.4th at 386. And *Johnson* held that allegations whose only specific instances involved the plaintiff herself were insufficient to support a reasonable inference of a persistent and widespread municipal practice. 163 F.4th at 822–23.

Even crediting Plaintiff's testimony in full, the trial evidence concerned two disciplinary episodes involving the same student and parent over a confined period. Plaintiff introduced no evidence of another student or family denied requested review, no comparable appeal dispute involving another student, and no complaints, reports, or other incidents beyond C.M.'s own disciplinary matters from which the duration and frequency of a District-wide practice could reasonably be inferred. Nor was there evidence from which a jury could infer that a practice of unconstitutional denials of review had become actually or constructively known to HCSD policymakers. Plaintiff's Rule 59(e) memorandum likewise identifies no transcript testimony or admitted exhibit concerning a comparable incident involving another student or otherwise evidencing a broader District practice.

The evidence therefore did not establish the persistent and widespread practice necessary for custom liability. That conclusion concerns the legal sufficiency

of the municipal-attribution proof; it does not depend on rejecting Plaintiff's testimony about what occurred in C.M.'s two disciplinary matters.

**D. The Evidence Did Not Establish Ratification by an Authorized Policymaker**

Plaintiff also argues that District officials with authority to correct the alleged deprivation failed to do so after receiving her requests, thereby ratifying the denial of process. (DE 60-1 at 5.)

Ratification requires action by an authorized policymaker. As *Praprotnik* explains, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). *Starbuck* applied that principle in the school-discipline setting, where the school board received the student's appeal, considered it, and approved the suspension. 28 F.4th at 534–35.

No comparable evidence was presented here. Plaintiff showed communications with District personnel, but she did not identify evidence that the HCSD Board or another official with final policymaking authority reviewed the challenged denial of process and approved the decision and its basis. Inaction by subordinate District personnel, without evidence that an authorized policymaker reviewed and approved the challenged decision and its basis, is not the policymaker ratification described in *Praprotnik* and *Starbuck*. The evidence therefore was insufficient to establish ratification.

**E. The Evidence Did Not Establish a Deliberately Indifferent Municipal Omission**

Finally, Plaintiff contends that HCSD's repeated failure to provide review after notice, together with what she characterizes as the absence of a defined appeal timeline, permitted a finding of deliberate indifference. (DE 60-1 at 4, 6.)

Municipal liability may arise from an omission, including a failure to adopt policies or to train or supervise, when the omission manifests deliberate indifference to constitutional rights. *Misjuns*, 139 F.4th at 384; *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989). Deliberate indifference is a demanding standard. In *Mullen*, the Fourth Circuit explained that it requires proof that municipal policymakers "(1) knew or should have known that their failure to act was likely to result in constitutional injury, and (2) disregarded that risk." 175 F.4th at 472–73. Ordinarily, a pattern of persistent and widespread similar violations supplies the notice necessary to support that inference. *Id.* at 473; *Owens*, 767 F.3d at 402–03.

The proof here did not establish that level of municipal fault. Even assuming every employee with whom Plaintiff communicated knew that she was seeking review, there was no evidence from which a reasonable jury could find that HCSD policymakers knew or should have known of a recurring constitutional deficiency in the District's disciplinary-review process and disregarded that risk. As discussed above, Plaintiff presented no comparable incidents involving other students and no evidence of a broader pattern. *Mullen* is instructive: without evidence of a pattern of

prior similar violations, the municipality lacked the notice necessary to establish deliberate indifference. 175 F.4th at 473–74.

Nor did the trial evidence establish the narrow circumstance in which the unconstitutional consequence of an omission is so obvious that a prior pattern is unnecessary. *See Canton*, 489 U.S. at 390 & n.10; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409–10 (1997). The disciplinary framework itself was not admitted, and the record did not otherwise establish a municipal choice with a known or obvious consequence of denying constitutionally required review.

Accordingly, the evidence did not permit a reasonable jury to find a deliberately indifferent omission attributable to HCSD.

## IV. CONCLUSION

Plaintiff correctly observes that final-policymaker action is not the exclusive route to municipal liability. But the Rule 50 ruling, considered as a whole, did not apply such a limitation, and reconsideration of the alternative theories Plaintiff identifies does not alter the result. Even viewing the trial evidence in Plaintiff's favor and without weighing credibility, the record was insufficient to permit a reasonable jury to attribute the alleged constitutional deprivation to HCSD through a final policymaker, a persistent and widespread custom, ratification, or a deliberately indifferent municipal omission.

Plaintiff therefore has not demonstrated clear error of law or manifest injustice warranting relief under Rule 59(e). Accordingly, Plaintiff's Motion to Alter or Amend Judgment (DE 60) is DENIED.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 18, 2026